## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

WARREN N. McCOWAN, JOHNNY P.
LUNA, and STEVE GUERRERO,

    Plaintiffs,

vs.                                             NO. CIV-98-581-LH/WWD

ALL STAR MAINTENANCE, INC.,
TIM KING, STEVE SWITZER, and
TRACY GORMAN

    Defendants.

## PLAINTIFFS' PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, WARREN N. McCOWAN, JOHNNY P. LUNA and STEVE GUERRERO, Plaintiffs in the above-styled and numbered cause and file this their Proposed Findings of Fact and Conclusions of Law and would respectfully show this Honorable Court the following:

### I. Findings of Fact

1.     Plaintiff Warren N. McCowan was hired by Defendant All Star Maintenance, Inc. and started working on or about July 21, 1997.

2.     Plaintiffs Johnny P. Luna and Steve Guerrero started working for Defendant All Star Maintenance, Inc. on July 25, 1997.

3.     Charles A. Peterson was hired by Defendant All Star Maintenance, Inc. to be the project manager for the White Sand Missile Range project.

4.     Plaintiffs are Mexican-Americans, a protected category under Title VII and 42 U.S.C. § 2000e et seq.



5. Plaintiffs were required to be paid Davis-Bacon wages set by the federal government at $11.41 an hour.

6. Defendant was a Federal Contractor required to not discriminate because of race, color, creed, national orgin, sex, age.

7. As Defendant All Star Maintenance, Inc.'s project manager, Charles A. Peterson was responsible to prevent any type of discrimination that existed in the workplace.

8. As Defendant All Star Maintenance, Inc.'s project manager, Tim King was responsible to prevent any type of discrimination that existed in the workplace.

9. Defendant Tim King was Plaintiffs' supervisor or field supervisor.

10. Defendant Tim King was responsible to enforce Defendant All Star Maintenance, Inc.'s alleged Equal Employment Opportunity Commission program.

11. Plaintiffs were ordered by Defendant to work together and constituted a painting crew.

12. Plaintiffs were terminated on August 15, 1997.

13. During the period of Plaintiffs' employment, as far as work performance, Defendant gave Plaintiffs only positive praises for their good work.

14. Defendant Tim King praised each Plaintiff for their good work and told them they were doing a better job than the other painting crew.

15. Plaintiffs were never reprimanded orally or in writing that their work performance failed to meet any requirements.

16. Plaintiffs were told that the second painting crew should be fired due to their poor performance.

17. Defendant Tim King's on-site foreman was Tracy Gorman.

18. Tracy Gorman had the authority to direct and reprimand the painters.

19. Defendant Tim King relied on Steve Switzer to supervise the project.

20. On behalf of Defendant All Star Maintenance, Inc., Defendant Steve Switzer directly supervised Plaintiffs.

21. On or about August 15, 1997, Plaintiffs approached Defendant Tim King and reported to him that they were being subjected to racial harassment by Defendants employees, particularly Steve Switzer and Tracy Gorman.

22. Defendant Tim King fired Plaintiffs for reporting the racial harassment of Plaintiffs.

23. Plaintiffs were fired on the basis of their Mexican-American race and for reporting racial harassment.

24. Plaintiffs were exposed to a hostile work environment.

25. No remedial action was taken against Steve Switzer or any other employee who had made racial comments to Plaintiffs.

26. During Plaintiffs' employment, they were subjected to numerous instances of racial harassment by Defendant's Anglo supervisors, particularly Steve Switzer and Tracy Gorman, such as:

   a. Mr. McCowan heard a carpenter say, "Oh shit, here comes one. There goes the neighborhood." This experience made Mr. McCowan very uncomfortable.

   b. During weekly safety meetings, when Defendant Tim King, Mr. Peterson and the whole company were present, Steve Switzer said, "Hey, my stupid little Mexicans." Defendant Tim King would laugh.

c. When Plaintiffs tried to include themselves in discussions between Anglo carpenters and Defendant Tim King, they would exclude Plaintiffs and tell them to go home.

d. On a daily basis, Steve Switzer would call Plaintiffs "burrito eaters" or "burrito-eating motherfuckers" and Defendant Tim King would laugh.

e. Steve Switzer told people he had an Aryan Nation tatoo.

f. Mr. McCowan heard Tracy Gorman and Steve Switzer say "burrito-eating motherfuckers."

g. Defendant Tim King would laugh at Steve Switzer and Tracy Gorman's racist comments.

h. Steve Switzer would refer to Hispanic people as "spics."

i. Defendant Tim King was present when Steve Switzer called Plaintiffs, "south of the border friends."

j. On more than one occasion, Joe Hernandez heard Steve Switzer use the phrase "south of the border buddies." Joe Hernandez did not like Switzer's comments.

k. Steve Switzer told Joe Hernandez, a co-worker, that he was Steve Switzer's "nigger for the day."

l. "Nigger" was Gorman's favorite word.

m. Tracy Gorman, Steve Switzer and Defendant Tim King refer to Joe Da Silva, a Hispanic co-worker from Brazil, as "Duh" and "Idiot" for nicknames.

n. Steve Switzer told Joe Hernandez that he had gotten his Aryan Nation tatoo after killing a black man and knifing a "spic" in prison.

o. Steve Switzer's statements regarding his Aryan Nation association made Joe Hernandez believe that Steve Switzer was a dangerous person to Mexican-Americans.

p. Defendant Tim King had Tracy Gorman put up an anti-discrimination poster and Tracy Gorman said, "This ain't a law, it's a joke." They both laughed.

q. After Plaintiffs were fired, the second painting crew was reassigned within the company as general laborers.

r. Tracy Gorman heard Steve Switzer refer to his assistant, Joe Hernandez, as his "south of the border buddy" and Steve Switzer made this statement in Plaintiffs' presence.

s. Tracy Gorman heard Steve Switzer refer to Joe Hernandez as his "nigger for the day."

t. Tracy Gorman admitted that Steve Switzer should have been fired for his daily racial comments.

u. Steve Switzer would refer to Plaintiffs' paint crew as "fucking painters" at least once a day.

v. Almost every day, Steve Switzer would refer to Plaintiffs as his "fucking stupid Mexican."

w. When Steve Switzer would refer to Plaintiffs as "fucking stupid Mexican[s]", Mr. Luna would become embarrassed and upset.

x. Joe Hernandez told Plaintiffs that Steve Switzer called Plaintiffs "a bunch of wannabe cholos...with our fucking cholo attitudes."

y. Steve Switzer was constantly making Mexican jokes.

z. Defendant Tim King was present when Tracy Gorman and Steve Switzer made racist comments.

aa. Defendants' racist comments were negative towards Mexican-Americans.

bb. Joe Hernandez heard Defendants and Steve Switzer refer to Hispanics as "cholos."

27. As Plaintiffs would enter the weekly safety meeting in Defendant All Star Maintenance, Inc.'s field office, they would be greeted by racially discriminatory statements from Tracy Gorman and Steve Switzer in Tim King and Charles Peterson's presence.

28. As Plaintiffs got off work, Steve Guerrero heard Tim King, Tracy Gorman and another Anglo worker refer to Plaintiffs with racially discriminatory statements.

29. Plaintiffs have stated that they felt uncomfortable and unwanted as a result of the racially discriminatory and hostile work environment.

30. Johnny P. Luna has stated that although he loved working with his hands, he dreaded the day's racism ahead of him.

31. Mr. Peterson and Defendant Tim King were present when many of the racially discriminatory statements were made and provided no assistance to Plaintiffs.

32. In light of the record as a whole and after examining the totality of the circumstances, Plaintiffs were subjected to racial harassment by Defendants.

33. Defendants' reasons for firing Plaintiffs was pretextual.

34. Defendants did not keep written files of any employee's background.

35. Defendants failed to establish whether the paint subcontractors met any performance goals.

36. Plaintiffs possessed similar skills compared to the second painting crew that was

retained and re-assigned.

37. Defendants failed to present any evidence of the criteria used to evaluate the basis for the decision to retain one painting crew over the other.

38. Plaintiffs were subjected to pervasive racial harassment by Defendants that occurred regularly over a three-week period of employment.

39. As a result of Defendant All Star Maintenance, Inc.'s discriminatory conduct, Plaintiffs suffered a great deal of humiliation, self-doubt, stress, depression, financial hardship, aggravation and emotion distress.

40. The acts of Defendants were done with malice or reckless indifference to the rights of Plaintiffs to be free from intentional discrimination in employment.

41. Defendant All Star Maintenance, Inc.'s employees that allowed the discriminatory and/or retaliatory conduct work or worked in a managerial capacity.

42. Defendant All Star Maintenance, Inc. did not engage in good faith efforts to prevent racial harassment in the workplace, to prevent discriminatory discharges, and/or to prevent retaliatory discharges.

43. Charles A. Peterson, Tim King, Tracy Gorman and Steve Switzer all worked in a managerial capacity for Defendant All Star Maintenance, Inc. because they had authority to make discretionary recommendations about employment or personnel matters and/or they were authorized to report, investigate or remedy any inappropriate conduct or behavior that occurred at the workplace.

44. Defendant All Star Maintenance, Inc. did not engage in good faith efforts to prevent

racial harassment in the workplace, and/or to prevent discriminatory discharges and/or to prevent retaliatory discharges because Defendant All Star Maintenance, Inc. failed to adopt or implement policies and procedures designed to identify conduct that is racially harassing, failed to adopt policies that clearly prohibited such conduct in the workplace, and failed to effectively enforce such policies.

45. Defendant All Star Maintenance, Inc. did not engage in good faith efforts to prevent racial harassment in the workplace, and/or to prevent discriminatory discharges and/or to prevent retaliatory discharges because Defendant All Star Maintenance, Inc. failed to undertake any efforts to inform its employees of the existence of policies and procedures designed to identify conduct that is racially harassing and/or policies that clearly prohibited such conduct in the workplace.

46. Defendant All Star Maintenance, Inc. did not engage in good faith efforts to prevent racial harassment in the workplace, and/or to prevent discriminatory discharges and/or to prevent retaliatory discharges because Defendant All Star Maintenance, Inc.'s employees charged with the responsibility for implementing, handling and/or responding to complaints fo racial harassment, discriminatory discharge and/or retaliatory discharge failed to follow the procedures set out in such policy.

47. Plaintiff Warren N. McCowan suffered humiliation, self-doubt, stress, depression, financial hardships, aggravation, mental anguish and emotional distress proximately caused by Defendants' discriminatory conduct.

48. Plaintiff Johnny P. Luna suffered humiliation, self-doubt, stress, depression, financial hardships, aggravation, mental anguish and emotional distress proximately caused by Defendants' discriminatory conduct.

49. Plaintiff Steve Guerrero suffered humiliation, self-doubt, stress, depression, financial

hardships, aggravation, mental anguish and emotional distress proximately caused by Defendants' discriminatory conduct.

50. Plaintiff Warren N. McCowan suffered loss of earnings of approximately $11.41 X 40 hours per week = $456.40 X 52 weeks per year = $23,732.80 per year.

51. Plaintiff Warren N. McCowan suffered $23,723.80 X 40 years until retirement = $949,312.00 of lost earning capacity.

52. Plaintiff Johnny P. Luna suffered loss of earnings of approximately $11.41 X 40 hours per week = $456.40 X 52 weeks per year = $23,732.80 per year.

53. Plaintiff Johnny P. Luna suffered $23,723.80 X 40 years until retirement = $949,312.00 of lost earning capacity.

54. Plaintiff Steve Guerrero suffered loss of earnings of approximately $11.41 X 40 hours per week = $456.40 X 52 weeks per year = $23,732.80 per year.

55. Plaintiff Steve Guerrero suffered $23,723.80 X 40 years until retirement = $949,312.00 of lost earning capacity.

## II. Conclusions of Law

1. Defendant All Star Maintenance, Inc. has unlawfully discriminated against Plaintiffs because Plaintiffs' race and/or their complaints about the racial harassment to which they were subjected were a motivating factor in Defendant All Star Maintenance, Inc.'s decision to discharge Plaintiffs from their employment. *St. Mary's Honor Center v. Hicks*, 113 S.Ct. 2742 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567 (1978); *Lloyd v. Georgia Gulf Corp.*, 961 F.2d 1190 (5th Cir. 1992).

2. Defendant All Star Maintenance, Inc.'s articulated reason for firing Plaintiffs is a

pretext for discrimination because the reason is not worthy of belief and Plaintiffs' race and/or complaints about the racial harassment to which they were subjected was a motivating factor in Defendant All Star Maintenance, Inc.'s decision to fire Plaintiffs from their employment. *St. Mary's Honor Center v. Hicks*, 113 S.Ct. 2742 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567 (1978); *Lloyd v. Georgia Gulf Corp.*, 961 F.2d 1190 (5th Cir. 1992).

3. Defendant All Star Maintenance, Inc. discriminated against Plaintiffs, based on their race, with regard to the terms, conditions, or privileges of their employment since Defendant All Star Maintenance, Inc. subjected Plaintiffs to a working environment that was abusive or hostile for them, because of their race. *Meritor Savings Bank, FSB v. Vinson et al.*, 477 U.S. 57, 67 (1986); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

4. Plaintiffs established that Defendant All Star Maintenance, Inc. subjected Plaintiffs to a working environment that was abusive or hostile to them, because of their race, by showing that:

    a. Plaintiffs are Mexican-American;

    b. Plaintiffs were subjected to unwelcome harassment;

    c. The harassment was based on their race;

    d. The harassment affected a term, condition, or privilege of Plaintiffs' employment;

    e. Defendant All Star Maintenance, Inc. knew, or should have known of the harassment, and failed to take prompt and effective remedial action.

*McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998); *Williamson v. City of Houston*, 148 F.3d 462, 465 (5th Cir. 1998); *Galloway v. Matagorda County, Texas et al.*, 35 F.Supp.2d 952, 955 (S.D. Tex. 1999).

5. The fact that Defendant All Star Maintenance, Inc. may not have consciously intended to subject Plaintiffs to a working environment that was abusive or hostile to them, because of their race, is not a defense to Plaintiffs' claim that Defendant All Star Maintenance, Inc. subjected Plaintiffs to such an environment, because Plaintiffs have shown:

   a. Plaintiffs are Mexican-American;

   b. Plaintiffs were subjected to unwelcome harassment;

   c. The harassment was based on their race;

   d. The harassment affected a term, condition, or privilege of Plaintiffs' employment;

   e. Defendant All Star Maintenance, Inc. knew, or should have known of the harassment, and failed to take prompt and effective remedial action.

*McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998); *Williamson v. City of Houston*, 148 F.3d 462, 465 (5th Cir. 1998); *Galloway v. Matagorda County, Texas et al.*, 35 F.Supp.2d 952, 955 (S.D. Tex. 1999).

6. Racial harassment affected terms, conditions, or privileges of Plaintiffs' employment, because:

   a. Plaintiffs were subjected to intimidation, ridicule, or insult, based on their race, that was severe and pervasive enough to create a working environment that a reasonable person, in Plaintiffs' position, would have found hostile and abusive; and

   b. Plaintiffs perceived their working environment to be hostile and abusive.

*Meritor Savings Bank, FSB v. Vinson et al.*, 477 U.S. 57, 65 (1986); *Waltman v. International Paper Co.*, 875 F.2d 468, 477 (5th Cir. 1989); *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-23 (1993); *Faragher v. City of Boca*

*Raton*, 524 U.S. 775 (1998).

7. The racial harassment was unwelcome because Plaintiffs did not solicit or request or invite it, and if they regarded the conduct as undesirable or offensive. 29 C.F.R. § 1604.11(b); *Meritor Savings Bank v. Vinson*, 477 U.S. 63, 69 (1986).

8. Defendants' racial harassment of Plaintiffs was pervasive and created a working environment that a reasonable person would find abusive or hostile because it occurred regularly over a three-week period of employment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-23 (1993); *DeAngelis v. El Paso Municipal Police Officers Assoc.*, 51 F.3d 591 (5th Cir. 1995).

9. By looking at all the circumstances, Plaintiffs were subjected to harassment, based on their race, while working for Defendant All Star Maintenance, Inc., that a reasonable person in their position would have found to be hostile or abusive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-23 (1993).

10. The harassing circumstances that Plaintiffs were subjected to included frequent discriminatory conduct, severe discriminatory conduct, physically threatening discriminatory conduct, and discriminatory conduct that unreasonably interfered with Plaintiffs' work performance. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-23 (1993).

11. Defendant All Star Maintenance, Inc. knew or should have known of the racial harassment, because Plaintiffs were subjected to the harassment in the presence of supervisors, forepersons and managers who had the authority to take action to correct the situation and/or Plaintiffs made complaints to supervisors who had the authority to accept the complaints and take action on the complaints. *Williamson v. City of Houston*, 148 F.3d 462, 466 (5th Cir. 1998).

12. Plaintiffs established that Defendant All Star Maintenance, Inc. discriminated against

them because of their having complained about a discriminatory employment practice by it, when Plaintiffs showed that:

    a.    Plaintiffs complained about the discriminatory employment practice by Defendant All Star Maintenance, Inc.; and

    b.    Defendant All Star Maintenance, Inc. discharged Plaintiffs from their employment, because of their complaint about its discriminatory employment practice.

*Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995); *Mattern v. Eastman Kodak*, 104 F.3d 702, 707 (5th Cir. 1997).

13. Defendant All Star Maintenance, Inc. discharged Plaintiffs because of Plaintiffs' complaints about a discriminatory employment practice by it, because Defendant All Star Maintenance, Inc. made the decision to discharge Plaintiffs immediately after Plaintiffs complained about a discriminatory employment practice by it. *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 927-928 (5th Cir. 1999).

14. Plaintiffs established that they complained about a discriminatory employment practice by Defendant All Star Maintenance, Inc. by showing that they complained, in good faith, about being subjected to a working environment that was abusive or hostile to them because of their race. *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130 (5th Cir. 1981); *Trent v. Valley Elec. Ass'n, Inc.*, 41 F.3d 524 (9th Cir. 1994); *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170 (2nd Cir. 1996); *Moyo v. Gomez*, 32 F.3d 1382 (9th Cir. 1994); *Meeks v. Computer Associates Intern.*, 15 F.3d 1013 (11th Cir. 1994).

15. Plaintiffs have shown that either their race or their complaints about the racially hostile work environment to which they believed they were being subjected was a motivating factor

in Defendant All Star Maintenance, Inc.'s decision to discharge them from their employment. *Price Waterhouse v. Hopkins*, 109 S.Ct. 1775, 1787 (1989); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Brown v. East Mississippi Elec. Power Ass'n*, 989 F.2d 858, 861-62 (5th Cir. 1993); *Jack v. Texaco Research Center*, 743 F.2d 1129, 1131 (5th Cir. 1984); *See e.g., McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir.); *DeAnda v. St. Joseph Hospital*, 671 F.2d 850, 856 (5th Cir. 1982).

16. Plaintiffs are entitled to lost wages and benefits, taking into account any increases in salary and benefits Plaintiffs would have received had they not been discharged because Plaintiffs were discharged because of their race, and/or in retaliation for their opposition to the racial harassment to which they believed they were being subjected. 42 U.S.C. § 12117; 42 U.S.C. §2000e-5(g)(1); *Lorillard v. Pons*, 434 U.S. 575 (1978); *Salinas v. Roadway Exp., Inc.*, 735 F.2d 1574, 1578-79 (5th Cir. 1984); *Johnson v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1579 (5th Cir. 1989), *cert. denied* 493 U.S. 1019 (1990).

17. Plaintiffs are entitled to compensatory damages for the humiliation, self-doubt, stress, depression, financial hardships, aggravation, mental anguish and emotional distress that were proximately caused by Defendant All Star Maintenance, Inc.'s discriminatory conduct.

18. Plaintiffs are entitled to punitive damages, in addition to compensatory damages, because Plaintiffs were subjected to a working environment that was abusive or hostile for them, because of their race; were discharged, even in part, because of their race; and/or were discharged, even in part, in retaliation for their complaints about the racially hostile work environment to which they reasonably believed they were being subjected, and

    a. The acts of Defendant All Star Maintenance, Inc. were done with malice or reckless indifference to the rights of Plaintiffs to be free from intentional discrimination in

employment.

b.  Defendant All Star Maintenance, Inc.'s employees that allowed the discriminatory and/or retaliatory conduct work or worked in a managerial capacity.

c.  Defendant All Star Maintenance, Inc. did not engage in good faith efforts to prevent racial harassment in the workplace, to prevent discriminatory discharges, and/or to prevent retaliatory discharges.

Devitt, Blackmar & Wolff, *Civil Federal Jury Practice and Instructions*, Vol. 3A, 1987 & 2000 Supp., § 104.07 (modified); 42 U.S.C. § 1981a(b)(a); *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999); *Miller v. Kenworth of Dothan, Inc.*, 82 F.Supp.2d 1299 (M.D. Ala. 2000).

19.  Defendant All Star Maintenance, Inc. acted with malice or reckless indifference toward Plaintiffs because it disregarded its legal obligation to prevent them from being racially harassed and/or its legal obligation to correct that harassment, once it knew or should have known that it was occurring, and/or it disregarded its legal obligation to prevent them from being discharged from their employment due to their race and/or it disregarded its legal obligation to prevent them from being discharged in retaliation for their complaints about the racial harassment to which they believed they were being subjected. 3 Devitt, Blackmar & Wolff, *Federal Jury Practice and Instructions*, § 104.07 (1987 & Supp. 1999) (modified); 42 U.S.C. § 1981a(b)(1) (1994); *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999); *Miller v. Kenworth of Dothan, Inc.*, 82 F.Supp.2d 1299, 1305-06 (M.D. Ala. 2000).

Respectfully submitted,

_____
JAMES F. SCHERR
Attorney for Plaintiff Johnny Luna
109 N. Oregon, 12th Floor
El Paso, Texas 79901
(915) 544-0100 voice
(915) 532-1759 facsimile

_____
SAM J. LEGATE
Attorney for Plaintiff Warren McCowan
109 N. Oregon, 12th Floor
El Paso, Texas 79901
(915) 544-0100 voice
(915) 532-1759 facsimile

-and-

ANGEL L. SAENZ, ESQ.
333 South Campo Street
Las Cruces, New Mexico 88001
(505) 526-3333 voice
(505) 523-2238 facsimile

_____
ANGEL L. SAENZ
Attorney for Plaintiff Steve Guerrero

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing pleading was DELIVERED to all counsel of record this _____ day of April, 2002, as follows:

Charles J. Vigil
Attorney at Law
P.O. Box 1888
Albuquerque, NM 87103

_____
JAMES F. SCHERR

G:\MCCOWAN.W\trial\Proposed_findings_fact.wpd