IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WARREN N. McCOWAN, JOHNNY P.
LUNA, and STEVE GUERRERO,

    Plaintiffs,

vs.

ALL STAR MAINTENANCE, INC.,
TIM KING, STEVE SWITZER, and
TRACY GORMAN

    Defendants.

NO. CIV-98-581-LH/WWD

## PLAINTIFFS' FIRST AMENDED POST-TRIAL FINDINGS OF FACT & CONCLUSIONS OF LAW

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW, WARREN N. McCOWAN, JOHNNY P. LUNA and STEVE GUERRERO, Plaintiffs in the above-styled and numbered cause and file this their Proposed Findings of Fact and Conclusions of Law and would respectfully show this Honorable Court the following:

### I. Findings of Fact

1.    Plaintiff Warren N. McCowan was hired by Defendant All Star Maintenance, Inc. and started working on or about July 21, 1997.

2.    Plaintiffs Johnny P. Luna and Steve Guerrero started working for Defendant All Star Maintenance, Inc. on July 25, 1997.

3.    Charles A. Peterson was hired by Defendant All Star Maintenance, Inc. to be the project manager for the White Sand Missile Range project.

4.    Plaintiffs are Mexican-Americans, a protected category under Title VII and 42 U.S.C. § 2000e et seq.



19. Steve Switzer was a supervisor to Plaintiffs.

20. Tracy Gorman had the authority to direct and reprimand the painters with knowledge of Tim King, as identified in Tim King's October 13, 1997 letter to EEOC.

21. On behalf of Defendant All Star Maintenance, Inc., Tracy Gorman and Steve Switzer directly supervised Plaintiffs.

22. On or about August 15, 1997, Plaintiffs approached Defendant Tim King and reported to him that they were being subjected to racial harassment by Defendants supervisors.

23. On August 15, 1997, immediately upon reporting racial discrimination, Defendants fired Plaintiffs for reporting racial harassment of Plaintiffs.

24. Plaintiffs were fired on the basis of their Mexican-American race and for reporting racial harassment.

25. Plaintiffs were exposed to a hostile work environment.

26. No remedial action was taken against Steve Switzer who had made racial comments to Plaintiffs.

27. No remedial action was taken against Tracy Gorman for racial comments made against Mexican Americans.

28. During Plaintiffs' employment, they were subjected to pervasive, continuous instances of racial harassment by Defendant's Anglo supervisors, particularly Steve Switzer and Tracy Gorman, such as:

    a. On a daily basis, Plaintiffs were referred to as "Spics."

    b. On a continuous basis, Steve Switzer would call Plaintiffs "burrito eaters" or "burrito-eating motherfuckers." Defendant Tim King would laugh.

c.  Steve Switzer and Tracy Gorman made statements referring to Plaintiffs and other Mexican Americans of "Stupid Fucking Mexicans," "Dumb Fucking Mexicans," "Lazy Mexicans."

d.  Mr. McCowan heard Tracy Gorman and Steve Switzer say "burrito-eating motherfuckers."

e.  Steve Switzer referred to Mexicans as "spics."

f.  "Nigger" was used by Tracy Gorman on numerous occasions.

g.  Tracy Gorman, Steve Switzer and Defendant Tim King refer to Joe Da Silva, a Hispanic co-worker as, "Duh" and "Idiot" for nicknames.

h.  Defendant Tim King had Tracy Gorman put up an EEOC anti-discrimination poster that said "Discrimination is against the Law" Tracy Gorman said, "This ain't a law, it's a joke." Tim King and Tracy Gorman both laughed in the presence of Plaintiffs.

i.  Tracy Gorman heard Steve Switzer refer to Mexican Americans as "south of the border friends."

j.  Tracy Gorman heard Steve Switzer use derogatory racial remarks.

k.  Tracy Gorman admitted that Steve Switzer should have been fired for his pervasive continuous racial comments.

l.  Almost every day, Steve Switzer would refer to Plaintiffs as "fucking stupid Mexicans"

m.  Steve Switzer would refer to Plaintiffs as "fucking stupid Mexican[s]."

n.  Steve Switzer called Plaintiffs "a bunch of wannabe cholos...with fucking cholo attitudes."

o.  Steve Switzer was constantly making Mexican jokes.

p.  Joe Hernandez heard Steve Switzer refer to Hispanics as "cholos."

q.  On more than one occasion, Joe Hernandez heard Steve Switzer use the phrase "south of the border buddies." Joe Hernandez did not like Switzer's comments.

5. Plaintiffs were required to be paid Davis-Bacon wages set by the federal government at $11.41 an hour.

6. Defendant was a Federal Contractor required to not discriminate because of race, color, creed, national orgin, sex, age.

7. As Defendant All Star Maintenance, Inc.'s project manager, Charles A. Peterson was responsible to prevent any type of discrimination that existed in the workplace.

8. As Defendant All Star Maintenance, Inc.'s field manager, Tim King was responsible to prevent any type of discrimination that existed in the workplace.

9. Defendant Tim King was Plaintiffs' supervisor or field supervisor.

10. Defendant Tim King was responsible to enforce Defendant All Star Maintenance, Inc.'s alleged Equal Employment Opportunity Commission program.

11. Defendant Allstar Maintenance, Inc. had no EEOC policy to prevent discrimination based on race, color, creed, or national orgin.

12. Plaintiffs were ordered by Defendants to work together as a painting crew.

13. Plaintiffs were terminated on August 15, 1997.

14. During the period of Plaintiffs' employment, as far as work performance, Defendant gave Plaintiffs only positive praises for their good work.

15. Defendant Tim King praised each Plaintiff for their good work and told them they were doing a better job than the other painting crew.

16. Tracy Gorman was a foreman for Defendant Allstar Maintenance, Inc.

17. Steve Switzer was a foreman for Defendant Allstar Maintenance, Inc.

18. Tracy Gorman was a supervisor to Plaintiffs.

r.  Steve Switzer told Joe Hernandez, a co-worker, that he was Steve Switzer's "nigger for the day."

s.  Mr. McCowan heard, "Here comes one. There goes the neighborhood." This statement upset Mr. McCowan, making him very uncomfortable.

t.  During weekly safety meetings, when Defendant Tim King, Mr. Peterson and the whole company were present, Steve Switzer referred to Mexican Americans as, "South of the Border Friends." Defendant Tim King would laugh.

u.  Defendant Tim King and Charles Peterson were present at a weekly meeting when Steve Switzer called Plaintiffs "South of the Border Friends."

v.  When Plaintiffs tried to include themselves in discussions between Anglo supervisors and Defendant Tim King, they would exclude Plaintiffs and tell them to go home.

w.  Steve Switzer told people he was a member of the Aryan Nation, a white supremacy group.

x.  Steve Switzer told Joe Hernandez that he had gotten his Aryan Nation tattoo after killing a black man and knifing a "spic" in prison.

y.  Steve Switzer's statements regarding his Aryan Nation membership made Plaintiffs believe that Steve Switzer was a dangerous person to Mexican-Americans.

z.  Defendant Tim King laughed at Steve Switzer and Tracy Gorman's racist comments.

aa. On July 30, 1997, prior to Plaintiff Warren McCowan's August 28, 1997 statement to EEOC and in his notes, Tracy Gorman had called David Stukes a "Nigger" and that "Stukes should be hung from a tree" along with other negative adjectives. This statement was made prior to the September 23, 1997 comment.

bb. In September, 1997, David Stukes, an African American was forced to resign because of racist comments. The racist comments against David Stukes were made prior to his leaving.

cc. In October, 1997, Charles Peterson and Tim King reported to EEOC they had no knowledge of any racist comments in the work place.

dd. In October, 1997, Charles Peterson and Tim King sent EEOC a letter from Tracy Gorman denying any racist comments made in the work place even though they knew Tracy Gorman had made racist comments against David Stukes.

ee. In their November 4, 1997, EEOC questionnaire, Tim King and Charles Peterson denied knowledge of any racist comments.

ff. Tim King and Charles Peterson fired Tracy Gorman on November 7, 1997 for racist comments made against David Stukes. This firing occurred while EEOC was investigating Defendants for racist statements. This firing was over 1 ½ month after David Stukes resigned and 3 days after the EEOC questionnaires of Tim King and Charles Peterson who both denied any racial comments had been made at work.

gg. In the EEOC questionnaires of Ray Fernandez, Mike Black, Jose Benavidez and Frank Garcia, racist comments against Mexican Americans were confirmed in the work place of Allstar Maintenance, Inc.

hh. Every witness called to testify admitted they heard that racist comments made in the work place of Allstar Maintenance, Inc.

ii. Defendant Tim King was present when Tracy Gorman and Steve Switzer made racist comments.

jj. Defendants' racist comments were negative towards Mexican-Americans.

kk. Tracy Gorman reported Steve Switzer's racial comments to Tim King on several occasions.

ll. Tim King knew in August of Steve Switzer's racial comments. (Peterson dep. pg. 154)

mm. Tim King reported to Charles Peterson of Steve Switzer's racist slurs.

nn. In August, Charles Peterson and Tim King knew of racist comments made in the work place.

oo. After Plaintiffs were fired, none of the other painting crews were laid off. All other painters who did not complain were found other work with the company.

29. As Plaintiffs would enter the weekly safety meeting at Defendant All Star

Maintenance, Inc.'s field office, they would be greeted by racially discriminatory statements from Tracy Gorman and Steve Switzer in Tim King and Charles Peterson's presence.

30. As Plaintiffs got off work, Steve Guerrero heard Tim King, Tracy Gorman and another Anglo worker refer to Plaintiffs with racially discriminatory statements.

31. Plaintiffs have stated that they felt uncomfortable and unwanted as a result of the racially discriminatory and hostile work environment.

32. Plaintiff Johnny Luna suffered mental anguish proximately caused by the racist comments and hostile work environment.

33. Plaintiff Warren McCowan suffered mental anguish proximately caused by the racist comments and hostile work environment.

34. Plaintiff Steve Guerrero suffered mental anguish proximately caused by the racist comments and hostile work environment.

35. Johnny P. Luna has stated that although he loved working, he dreaded the day of racism ahead of him.

36. Mr. Peterson and Defendant Tim King were present when many of the racially discriminatory statements were made and provided no assistance to Plaintiffs.

37. In light of the record as a whole and after examining the totality of the circumstances, Plaintiffs were subjected to racial harassment by Defendants.

38. Defendants' reasons for firing Plaintiffs was pretextual.

    a. Defendant's subcontracted out the painting work and permitted subcontractors to use sprayers, which was 2-3 times faster than the method required of Plaintiffs.

    b. Defendants' did not have separation notices for Plaintiffs to sign when fired

on August 15, 1997 even though Defendant's allege they decided to fire them one week prior and would always use written separation notices when terminating employees.

c. Defendants failed to provide Plaintiffs with necessary equipment to efficiently and quickly perform their job as painters, including sprayers, tarps and a vehicle.

d. Defendants failed to establish whether they inspected the subcontractor's work, whether the paint subcontractors met any performance goals or whether they complied with Davis Bacon wages.

e. Plaintiffs possessed better skills compared to the second painting crew that was retained and re-assigned.

f. Plaintiffs were all categorized as rehires.

g. Plaintiffs were not called back to work even though All-Star hired additional people.

39. Plaintiffs were subjected to a hostile work environment.

40. Plaintiffs were terminated by Defendants in retaliation for reporting racial discrimination.

41. Plaintiff Warren McCowan suffered lost wages of $96,435.58 from August 15, 1997 to date of trial.

42. Plaintiff Johnny Luna suffered lost wages of $7,782.48 from August 15, 1997 to date of trial (being 2 months at $11.41/hr and 2 years at $1.41).

43. Plaintiff Steve Guerrero suffered lost wages of 28,362.00 from August 15, 1997 to 1999.

44. Defendants failed to present any evidence of a reasonable basis for the criteria used to evaluate the basis for the decision to retain one painting crew over the other.

45. Plaintiffs were subjected to pervasive racial harassment by Defendants that occurred

regularly over their entire period of employment.

46. As a result of Defendant All Star Maintenance, Inc.'s discriminatory conduct, Plaintiffs suffered a great deal of mental anguish, including humiliation, loss of self worth, frustration, anger, feeling of worthlessness, self-doubt, stress, depression, financial hardship, aggravation and emotion distress. Warren McCowan contemplated suicide.

47. The acts of Defendants were done with malice or reckless indifference to the rights of Plaintiffs to be free from intentional discrimination in employment.

48. Defendant All Star Maintenance, Inc.'s employees that allowed the discriminatory and/or retaliatory conduct work or worked in a managerial/supervising capacity.

49. Defendant All Star Maintenance, Inc. did not engage in good faith efforts to prevent racial harassment in the workplace, to prevent a hostile work environment, to prevent discriminatory discharges, or to prevent retaliatory discharges.

50. Charles A. Peterson, Tim King, Tracy Gorman and Steve Switzer all worked in a managerial capacity for Defendant All Star Maintenance, Inc. because they had authority to make discretionary recommendations about work performance, employment or personnel matters and/or they were authorized to report, investigate or remedy any inappropriate conduct or behavior that occurred at the workplace.

51. Defendant All Star Maintenance, Inc. did not engage in good faith efforts to prevent racial harassment in the workplace, to prevent a hostile work environment, and/or to prevent discriminatory discharges and/or to prevent retaliatory discharges because Defendant All Star Maintenance, Inc. failed to adopt or implement policies and procedures designed to identify conduct that is racially harassing, failed to adopt policies that clearly prohibited such conduct in the

workplace, and failed to effectively enforce such policies.

52. Defendant All Star Maintenance, Inc. did not engage in good faith efforts to prevent racial harassment in the workplace, to prevent a hostile work environment, and/or to prevent discriminatory discharges and/or to prevent retaliatory discharges because Defendant All Star Maintenance, Inc. failed to undertake any efforts to inform its employees of the existence of policies and procedures designed to identify conduct that is racially harassing and/or policies that clearly prohibited such conduct in the workplace.

53. Defendant All Star Maintenance, Inc. did not engage in good faith efforts to prevent racial harassment in the workplace, to prevent a hostile work environment, and/or to prevent discriminatory discharges and/or to prevent retaliatory discharges because Defendant All Star Maintenance, Inc.'s employees charged with the responsibility for implementing, handling and/or responding to complaints fo racial harassment, discriminatory discharge and/or retaliatory discharge failed to follow the procedures set out in such policy.

54. Plaintiff Warren N. McCowan suffered mental anguish, humiliation, loss of self worth, frustration, anger feeling of worthlessness, stress, depression, financial hardships, aggravation, mental anguish and emotional distress proximately caused by Defendants' discriminatory conduct. Warren McCowan contemplated suicide.

55. Plaintiff Johnny P. Luna suffered mental anguish, humiliation, loss of self worth, frustration, anger feeling of worthlessness, stress, depression, financial hardships, aggravation, mental anguish and emotional distress proximately caused by Defendants' discriminatory conduct.

56. Plaintiff Steve Guerrero suffered mental anguish, humiliation, loss of self worth, frustration, anger feeling of worthlessness, stress, depression, financial hardships, aggravation,

mental anguish and emotional distress proximately caused by Defendants' discriminatory conduct.

57. Reasonable punishment for Defendant is to enjoin Charles Peterson, Tim King and the owners, shareholders, officers and directors of Allstar Maintenance, Inc. from participating, directly and indirectly, in any Federal or State contract.

58. Reasonable punitive damages are $500,000 per Plaintiff.

59. Even though Defendant All Star claims that it is insolvent, it has over $3,100,000 in monies due related parties and bank over drafts. This shows the company is being run with the financial records in an effort to evade responsibility to unsecured creditors.

## II. Conclusions of Law

1. Defendant All Star Maintenance, Inc. has unlawfully discriminated against Plaintiffs because Plaintiffs' race and/or their complaints about the racial harassment to which they were subjected were a motivating factor in Defendant All Star Maintenance, Inc.'s decision to discharge Plaintiffs from their employment. *St. Mary's Honor Center v. Hicks*, 113 S.Ct. 2742 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567 (1978); *Lloyd v. Georgia Gulf Corp.*, 961 F.2d 1190 (5th Cir. 1992).

2. Defendant All Star Maintenance, Inc.'s articulated reason for firing Plaintiffs is a pretext for discrimination because the reason is not worthy of belief and Plaintiffs' race and/or complaints about the racial harassment to which they were subjected was a motivating factor in Defendant All Star Maintenance, Inc.'s decision to fire Plaintiffs from their employment. *St. Mary's Honor Center v. Hicks*, 113 S.Ct. 2742 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567 (1978); *Lloyd v. Georgia Gulf Corp.*, 961 F.2d 1190 (5th Cir. 1992).

3. Defendant All Star Maintenance, Inc. discriminated against Plaintiffs, based on their race, with regard to the terms, conditions, or privileges of their employment since Defendant All Star Maintenance, Inc. subjected Plaintiffs to a working environment that was abusive or hostile for them, because of their race. *Meritor Savings Bank, FSB v. Vinson et al.*, 477 U.S. 57, 67 (1986); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

4. Plaintiffs established that Defendant All Star Maintenance, Inc. subjected Plaintiffs to a working environment that was abusive or hostile to them, because of their race, by showing that:

    a. Plaintiffs are Mexican-American;

    b. Plaintiffs were subjected to unwelcome harassment;

    c. The harassment was based on their race;

    d. The harassment affected a term, condition, or privilege of Plaintiffs' employment;

    e. Defendant All Star Maintenance, Inc. knew, or should have known of the harassment, and failed to take prompt and effective remedial action.

*McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998); *Williamson v. City of Houston*, 148 F.3d 462, 465 (5th Cir. 1998); *Galloway v. Matagorda County, Texas et al.*, 35 F.Supp.2d 952, 955 (S.D. Tex. 1999).

5. The fact that Defendant All Star Maintenance, Inc. may not have consciously intended to subject Plaintiffs to a working environment that was abusive or hostile to them, because of their race, is not a defense to Plaintiffs' claim that Defendant All Star Maintenance, Inc. subjected Plaintiffs to such an environment, because Plaintiffs have shown:

    a. Plaintiffs are Mexican-American;

    b. Plaintiffs were subjected to unwelcome harassment;

  c. The harassment was based on their race;

  d. The harassment affected a term, condition, or privilege of Plaintiffs' employment;

  e. Defendant All Star Maintenance, Inc. knew, or should have known of the harassment, and failed to take prompt and effective remedial action.

*McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998); *Williamson v. City of Houston*, 148 F.3d 462, 465 (5th Cir. 1998); *Galloway v. Matagorda County, Texas et al.*, 35 F.Supp.2d 952, 955 (S.D. Tex. 1999).

  6. Racial harassment affected terms, conditions, or privileges of Plaintiffs' employment, because:

  a. Plaintiffs were subjected to intimidation, ridicule, or insult, based on their race, that was severe and pervasive enough to create a working environment that a reasonable person, in Plaintiffs' position, would have found hostile and abusive; and

  b. Plaintiffs perceived their working environment to be hostile and abusive.

*Meritor Savings Bank, FSB v. Vinson et al.*, 477 U.S. 57, 65 (1986); *Waltman v. International Paper Co.*, 875 F.2d 468, 477 (5th Cir. 1989); *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-23 (1993); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

  7. The racial harassment was unwelcome because Plaintiffs did not solicit or request or invite it, and if they regarded the conduct as undesirable or offensive. 29 C.F.R. § 1604.11(b); *Meritor Savings Bank v. Vinson*, 477 U.S. 63, 69 (1986).

  8. Defendants' racial harassment of Plaintiffs was pervasive and created a working environment that a reasonable person would find abusive or hostile because it occurred regularly

over a three-week period of employment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-23 (1993); *DeAngelis v. El Paso Municipal Police Officers Assoc.*, 51 F.3d 591 (5th Cir. 1995).

9. By looking at all the circumstances, Plaintiffs were subjected to harassment, based on their race, while working for Defendant All Star Maintenance, Inc., that a reasonable person in their position would have found to be hostile or abusive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-23 (1993).

10. The harassing circumstances that Plaintiffs were subjected to included frequent discriminatory conduct, severe discriminatory conduct, physically threatening discriminatory conduct, and discriminatory conduct that unreasonably interfered with Plaintiffs' work performance. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-23 (1993).

11. Defendant All Star Maintenance, Inc. knew or should have known of the racial harassment, because Plaintiffs were subjected to the harassment in the presence of supervisors, forepersons and managers who had the authority to take action to correct the situation and/or Plaintiffs made complaints to supervisors who had the authority to accept the complaints and take action on the complaints. *Williamson v. City of Houston*, 148 F.3d 462, 466 (5th Cir. 1998).

12. Plaintiffs established that Defendant All Star Maintenance, Inc. discriminated against them because of their having complained about a discriminatory employment practice by it, when Plaintiffs showed that:

    a. Plaintiffs complained about the discriminatory employment practice by Defendant All Star Maintenance, Inc.; and

    b. Defendant All Star Maintenance, Inc. discharged Plaintiffs from their employment, because of their complaint about its discriminatory employment practice.

*Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995); *Mattern v. Eastman Kodak*, 104 F.3d 702, 707 (5th Cir. 1997).

13. Defendant All Star Maintenance, Inc. discharged Plaintiffs because of Plaintiffs' complaints about a discriminatory employment practice by it, because Defendant All Star Maintenance, Inc. made the decision to discharge Plaintiffs immediately after Plaintiffs complained about a discriminatory employment practice by it. *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 927-928 (5th Cir. 1999).

14. Plaintiffs established that they complained about a discriminatory employment practice by Defendant All Star Maintenance, Inc. by showing that they complained, in good faith, about being subjected to a working environment that was abusive or hostile to them because of their race. *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130 (5th Cir. 1981); *Trent v. Valley Elec. Ass'n, Inc.*, 41 F.3d 524 (9th Cir. 1994); *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170 (2nd Cir. 1996); *Moyo v. Gomez*, 32 F.3d 1382 (9th Cir. 1994); *Meeks v. Computer Associates Intern.*, 15 F.3d 1013 (11th Cir. 1994).

15. Plaintiffs have shown that either their race or their complaints about the racially hostile work environment to which they believed they were being subjected was a motivating factor in Defendant All Star Maintenance, Inc.'s decision to discharge them from their employment. *Price Waterhouse v. Hopkins*, 109 S.Ct. 1775, 1787 (1989); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Brown v. East Mississippi Elec. Power Ass'n*, 989 F.2d 858, 861-62 (5th Cir. 1993); *Jack v. Texaco Research Center*, 743 F.2d 1129, 1131 (5th Cir. 1984); *See e.g., McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir.); *DeAnda v. St. Joseph Hospital*, 671 F.2d 850, 856 (5th Cir. 1982).

16. Plaintiffs are entitled to lost wages and benefits, taking into account any increases in

salary and benefits Plaintiffs would have received had they not been discharged because Plaintiffs were discharged because of their race, and/or in retaliation for their opposition to the racial harassment to which they believed they were being subjected. 42 U.S.C. § 12117; 42 U.S.C. §2000e-5(g)(1); *Lorillard v. Pons*, 434 U.S. 575 (1978); *Salinas v. Roadway Exp., Inc.*, 735 F.2d 1574, 1578-79 (5th Cir. 1984); *Johnson v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1579 (5th Cir. 1989), *cert. denied* 493 U.S. 1019 (1990).

17. Plaintiffs are entitled to compensatory damages for mental anguish, the humiliation, self-doubt, stress, depression, financial hardships, aggravation, mental anguish and emotional distress that were proximately caused by Defendants discriminatory conduct.

18. Plaintiffs are entitled to punitive damages, in addition to compensatory damages, because Plaintiffs were subjected to a working environment that was abusive or hostile for them, because of their race; were discharged, even in part, because of their race; and/or were discharged, even in part, in retaliation for their complaints about the racially hostile work environment to which they reasonably believed they were being subjected, and

   a. The acts of Defendant All Star Maintenance, Inc. were done with malice or reckless indifference to the rights of Plaintiffs to be free from intentional discrimination in employment.

   b. Defendant All Star Maintenance, Inc.'s employees that allowed the discriminatory and/or retaliatory conduct work or worked in a managerial capacity.

   c. Defendant All Star Maintenance, Inc. did not engage in good faith efforts to prevent racial harassment in the workplace, to prevent discriminatory discharges, and/or to prevent retaliatory discharges.

Devitt, Blackmar & Wolff, *Civil Federal Jury Practice and Instructions*, Vol. 3A, 1987 & 2000 Supp., § 104.07 (modified); 42 U.S.C. § 1981a(b)(a); *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999); *Miller v. Kenworth of Dothan, Inc.*, 82 F.Supp.2d 1299 (M.D. Ala. 2000).

19. Defendant All Star Maintenance, Inc. acted with malice or reckless indifference toward Plaintiffs because it disregarded its legal obligation to prevent them from being racially harassed and/or its legal obligation to correct that harassment, once it knew or should have known that it was occurring, and/or it disregarded its legal obligation to prevent them from being discharged from their employment due to their race and/or it disregarded its legal obligation to prevent them from being discharged in retaliation for their complaints about the racial harassment to which they believed they were being subjected. 3 Devitt, Blackmar & Wolff, *Federal Jury Practice and Instructions*, § 104.07 (1987 & Supp. 1999) (modified); 42 U.S.C. § 1981a(b)(1) (1994); *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999); *Miller v. Kenworth of Dothan, Inc.*, 82 F.Supp.2d 1299, 1305-06 (M.D. Ala. 2000).

Respectfully submitted,

JAMES F. SCHERR
Attorney for Plaintiff Johnny Luna
109 N. Oregon, 12th Floor
El Paso, Texas 79901
(915) 544-0100 voice
(915) 532-1759 facsimile

by

SAM J. LEGATE
Attorney for Plaintiff Warren McCowan
109 N. Oregon, 12th Floor
El Paso, Texas 79901
(915) 544-0100 voice
(915) 532-1759 facsimile

-and-

ANGEL L. SAENZ, ESQ.
333 South Campo Street
Las Cruces, New Mexico 88001
(505) 526-3333 voice
(505) 523-2238 facsimile

_____
ANGEL L. SAENZ
Attorney for Plaintiff Steve Guerrero

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was DELIVERED to all counsel of record this ___7___ day of May, 2002, as follows:

Charles J. Vigil
Attorney at Law
P.O. Box 1888
Albuquerque, NM 87103

_____
JAMES P. SCHERR

H:\MCCOWAN.W\trial\Post-findings-fact.wpd