IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WARREN N. McCOWAN, JOHNNY P.
LUNA, and STEVE GUERRERO,

    Plaintiffs,

vs.                                           Civ. No. 98-581 WWD/LFG

ALL STAR MAINTENANCE, INC.,
TIM KING, STEVE SWITZER, and
TRACY GORMAN,

    Defendants.

## MEMORANDUM OPINION AND FINDINGS OF FACT AND CONCLUSIONS OF LAW

      This law suit arises out of an employment situation where All Star Maintenance, Inc., hired the Plaintiffs to paint certain residences at White Sands Missile Range. The Plaintiffs were laid off after three weeks on the job. Plaintiffs claim that they were subjected to a racially hostile work environment and that they were discharged in retaliation for their having complained of the discrimination against them on the job. Defendants claim that the Plaintiffs were fired for economic reasons, and Defendants deny the hostile work environment. The findings and conclusions below follow a three day bench trial. The Court makes the following findings of fact and conclusions of law.

Findings of Fact.

    1. The court has jurisdiction over the parties and the subject matter in this law suit.

    2. All Star Maintenance, Inc. (hereinafter "All Star") was a government contractor performing repair and maintenance of military family housing at White Sands Missile Range in Alamogordo, New Mexico, at all times relevant to this lawsuit.

3. In the summer of 1997, when All Star was starting its operation, the project manager at White Sands was Charles Albert Peterson and his field manager was Tim King.

4. King relied on Tracy Gorman as his on-site foreman overseeing quality control and supplying crew needs. Steve Switzer was a carpenter on the project.

5. All Star hired Warren N. McCowan, who is one-half Hispanic, as a painter on July 21, 1997, and assigned him to work with a crew of painters employed on the project.

6. McCowan, whose mother was Hispanic, had held a variety of jobs unrelated to the construction industry and some other jobs with the industry including some experience as a painter for contractors.

7. Johnny Luna, an Hispanic, was hired as a painter by All Star on July 25, 1997.

8. Luna held various jobs before All Star, including working as a house painter.

9. Steve Guerrero, an Hispanic, was hired by All Star on July 25, 1997.

10. Guerrero held various jobs before All Star, including working as a house painter.

11. McCowan, Luna and Guerrero were set up as a painting crew by King, and in their three weeks at All Star, they painted 4 or 5 houses.

12. Plaintiffs were qualified painters.

13. Plaintiffs usually worked alone on the job; however, they attended safety meetings and production meetings held in the corporate offices and other employees, carpenters, etc., might pass through the houses being painted by the Plaintiffs crew.

14. During the time that Plaintiffs crew was at All Star, Plaintiffs were repeatedly subjected to a number of ethnic epithets such as "Spics", "stupid fucking Mexicans", "burrito eating mother fuckers", and "south of the border friends" from Steve Switzer, a carpenter working for All Star.

15. Tracy Gorman complained to Tim King about Switzer's remarks before any EEOC investigator went to the job site; however, the Plaintiffs had not complained to Gorman.

16. Such racially loaded remarks were overheard by Robert Scott Johnson, from Switzer at a safety meeting and in other places on the job.

17. Joe Hernandez, a laborer for All Star, heard racial epithets such as those set out above on more than one occasion, however, he did not speak out because he felt that he might get fired.

18. Martin Lucero, an All Star employee who worked mainly in Heating-Air-Conditioning and Ventilation did not hear Plaintiffs complain about racial remarks before they were fired in his presence on August 15, 1997, when Tim King told them, " there is no more work"; however, Lucero did not know where King and the Plaintiffs had been before he heard King terminate them.

19. Frank Garcia, another painter at All Star, heard Gorman call David Stukes, an African-American, and All Star employee, a "stupid Nigger"; and on the job he heard reports of people saying "stupid Mexicans" and "stupid little Mexicans" on the job.

20. At one time during Plaintiffs' employment, King asked Gorman to post an EEOC anti-discrimination poster; and when Gorman referred to the poster as "a joke," King responded to Gorman's comment with laughter.

21. Tim King admitted that he should have known what was going on in his small work force and he should be held responsible for the severe and pervasive discriminatory conduct against Mexican Americans by Switzer and Gorman. Defendants All Star and Tim King had actual knowledge of the racially hostile work environment at the White Sands Missile Range project.

22. An All Star employee handbook dated May 1996 states that it is All Star's company philosophy to provide a workplace free of racial harassment; however, the evidence does not indicate that All Star made a good faith effort to promote and enforce a policy against racial discrimination in the workplace.

23. Plaintiffs suffered emotional distress and humiliation as a result of the hostile work environment in which they worked.

24. Although King and Peterson had discussed the idea of switching from in-house painters to sub-contractors in order to lower the cost of house painting, at the time Plaintiffs were fired, there was no evidence that preparation had been made to discharge them; for example, no layoff notices had been prepared, which normally would have been done, and Plaintiffs had been told to attend a safety meeting which would be unnecessary if imminent discharge were being contemplated.

25. On August 15, 1997, following the safety meeting, Plaintiffs met with King and told him that they felt they were being discriminated against and were the target of racist remarks; however, Plaintiffs were reluctant to name their tormentors since they would have to continue working with them, and they were afraid of losing their jobs.

26. King's responses to Plaintiffs' complaints indicated that he knew whom Plaintiffs were referring to.

27. A few minutes after being told of the racial harassment by the Plaintiffs, King informed McCowan, Luna and Guerrero that they were no longer needed, and they were discharged.

28. Although King and Peterson may have considered discharging McCowan, Luna and Guerrero at some time in the future, the discharge immediately after the morning meeting on August 15, 1997, was the direct result of and causally connected to King's reactions to their complaints concerning racial harassment, and the discharge was not in accordance with any plan previously discussed by Peterson and King.

29. King's termination of Plaintiffs in retaliation for complaining about racial discrimination in the work place demonstrated malice and a reckless indifference to Plaintiffs' federally protected rights, and is sufficient to support an award of punitive damages.

30. Each Plaintiff suffered similar emotional distress and anxiety due to the severe and pervasive discrimination they suffered in their work environment during their three weeks stay at All Star, Inc., and each suffered similar emotional distress, anxiety, humiliation and economic loss as a result of being

summarily discharged when they were engaged in the protected conduct of reporting illegal harassment based on ethnicity; accordingly, identical awards of damages are appropriate since differentiation between Plaintiffs' individual damages is not feasible.

31. For the anxiety and emotional distress caused by the hostile work environment, each Plaintiff should be awarded compensatory damages in the amount of $7,500.00 plus punitive damages in the amount of $7,500.00; and for the emotional distress, wage loss, and other injuries caused by the retaliatory discharge, each Plaintiff should be awarded compensatory damages in the amount of $10,000.00 plus punitive damages in the amount of $10,000.00.

32. Plaintiffs are entitled to recover their costs and reasonable attorney fees.

Conclusions of Law.

1. This court has jurisdiction over Plaintiffs' claims and the parties, and venue is proper in the United States District Court for the District of New Mexico.

2. All Star maintenance, Inc., is an "employer" within the meaning of Title VII. Defendants King and Gorman are also "employers" as "agents" for All Stars under the meaning of the Act. See 42 U.S.C. 2000e(b).

3. The plaintiffs have established a prima facie case that creates an inference of discrimination, McDonell Douglas Corp. v. Green, 411 U.S. 792 (1973).

4. The work environment at All Star was hostile toward Hispanics; and the hostility as evidenced by denigrating racial slurs leveled at Plaintiffs or used in referring to Plaintiffs was sufficiently severe and pervasive so as to alter the conditions of Plaintiffs' employment and create an abusive work environment..

5. When Plaintiffs complained to Tim King on August 15, 1997, about racial discrimination on the job, they were engaged in protected opposition to discrimination; thereafter they were terminated which is an

adverse employment action; and there was a causal connection between the protected complaint and the termination.

6. Under the particular circumstances and timing of this case, All Star's purported reason for terminating Plaintiffs' employment was not worthy of belief.

7. King's conduct evidenced a reckless indifference to the Plaintiffs' federally protected right to be free from racial discrimination in the workplace, which would support an award of punitive damages.

8. Plaintiffs are entitled to recover compensatory and punitive damages against Defendants based on the failure of Defendant All Star and Defendant King to address the hostile work environment at All Star's project at White Sands Missile Range, and also on the retaliatory discharge of Plaintiffs by King.

9. For the anxiety and emotional distress caused by the hostile work environment, each Plaintiff should be awarded compensatory damages in the amount of $7,500.00 plus punitive damages in the amount of $7,500.00; and for the emotional distress, wage loss, and other injuries caused by the retaliatory discharge, each Plaintiff should be awarded compensatory damages in the amount of $10,000.00 plus punitive damages in the amount of $10,000.00.

10. Plaintiffs are entitled to recover their costs and reasonable attorney fees.

Judgment against Defendants and in favor of Plaintiffs will be entered in accordance with the foregoing.

_____
UNITED STATES MAGISTRATE JUDGE